STATE OF NEBRASKA, APPELLEE, V.
DARRELL J. VAUGHT, APPELLANT.
682 N.W.2d 284

Filed July 9, 2004. No. S-02-1480.

Thomas C. Riley, Douglas County Public Defender, and Timothy P. Burns for appellant.

Jon Bruning, Attorney General, and James H. Spears for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Darrell J. Vaught was convicted in the district court for Douglas County of first degree sexual assault on a child. Over Vaught's objection, the emergency room physician who treated and diagnosed the victim testified that the victim had identified Vaught as the perpetrator of the assault. Vaught's conviction and sentence were affirmed on appeal to the Nebraska Court of Appeals. *State v. Vaught*, 12 Neb. App. 306, 672 N.W.2d 262 (2003). We granted Vaught's petition for further review in which

he asserts that the Court of Appeals erred (1) in concluding that the district court had not erred in admitting the physician's testimony and (2) in concluding that trial counsel was not ineffective for failing to object to the physician's testimony on confrontation grounds. We affirm the Court of Appeals' decision.

## STATEMENT OF FACTS

The facts of this case are set forth in the Court of Appeals' opinion as follows:

The victim in this case was the 4-year-old daughter of Vaught's half sister. The events which gave rise to the present action occurred on or about August 23, 2000. On that date, the victim and her mother were staying at the residence of the victim's grandparents; Vaught also resided there. The victim's mother testified that the victim called Vaught "[D]J." The victim's mother testified that she put the victim to sleep on the couch wearing a nightgown and underwear. When the victim's mother left the victim, Vaught was the only other person awake in the house, and he was watching television near the victim.

The next morning the victim's mother noticed that the victim awoke without any underwear on. Although the victim's mother acknowledged that the victim would sometimes change her underwear during the night if she wet herself, on this occasion the victim's missing underwear were never located and the couch was not at all wet. The victim begged her mother to allow her to go to her father's house. The victim then went to the residence of her father and his wife.

That evening, the victim wet herself and the victim's father's wife gave her a bath. During the bath, the victim's father's wife noticed that the victim's genital area was red and swollen. The victim's father's wife had a conversation with the victim about what had happened, which conversation prompted the victim's father's wife to ask the victim's father who "[D]J" was. The victim's mother was then called, and the victim was taken to the hospital to be examined.

Dr. Larry Lamberty testified that he was the emergency room physician who examined the victim. He testified that

he saw the victim in one of the examination rooms, that he introduced himself as a doctor, and that he had no concerns that the victim was unable to understand where she was or who he was. He further testified that he explained to the victim that he was going to do an examination and that he asked her what had happened to her. Over hearsay objections, he testified that the victim said that "her Uncle DJ put his finger in her pee-pee." His examination indicated that the victim's "hymen was intact."

Dr. Cathy Hudson testified that she saw the victim a few days later for a more thorough examination, including the use of a colposcope. The colposcopic examination indicated a small puncture wound in the victim's vaginal area where "the distal-most portion of her vagina meets the hymenal tissue." She testified that the injury was consistent with digital penetration.

On September 28, 2000, Vaught was charged by information with first degree sexual assault on a child. Prior to trial, Vaught requested a psychological examination of the victim. The court overruled this request. After a bench trial, including the evidence and testimony set forth above, the court found Vaught guilty on June 24, 2002. On December 5, the court sentenced Vaught to 6 to 10 years' incarceration. This appeal followed.

*Vaught*, 12 Neb. App. at 307-08, 672 N.W.2d at 265-66.

On appeal to the Court of Appeals, Vaught made five assignments of error. The Court of Appeals rejected Vaught's five assignments of error and affirmed his conviction. Vaught's petition for further review is limited to the decision of the Court of Appeals with respect to only two of the five initial assignments of error; therefore, only the two relevant assignments of error will be discussed herein. Before the Court of Appeals, Vaught essentially asserted that (1) the district court had erred in admitting Dr. Larry Lamberty's testimony regarding the victim's statements as statements made by a declarant patient for the purpose of medical diagnosis or treatment under Neb. Rev. Stat. § 27-803(3) (Cum. Supp. 2002) and (2) trial counsel had provided ineffective assistance by failing to object to such testimony on confrontation grounds. The Court of Appeals rejected both assignments of error.

The following additional information with respect to the testimony at issue in these two assignments of error is found in the opinion of the Court of Appeals as follows:

> [T]he statement at issue was made by the victim during the course of a medical examination by Dr. Lamberty in the emergency room. Dr. Lamberty testified that he was dressed as a doctor at the time, that he was speaking to the victim in an examination room at the hospital, that he had explained to her that he was going to do an examination, and that he had no concerns that the victim did not understand where she was or who he was. Additionally, Dr. Lamberty testified that it is important for a medical professional in the situation he was in to obtain a thorough history regarding the causation and nature of the injury. Dr. Lamberty further testified that it is important for him, in assessing the patient's condition and determining treatment, to know who the perpetrator was, both so that he does not release a patient into the care of a perpetrator and for purposes of treating the patient's mental well-being. In this case, when Dr. Lamberty asked the victim what had happened to her, she replied that "her Uncle DJ put his finger in her pee-pee," and she indicated that she meant her vagina.

*State v. Vaught*, 12 Neb. App. 306, 310-11, 672 N.W.2d 262, 267 (2003).

After finding no merit to Vaught's assignments of error, the Court of Appeals affirmed Vaught's conviction. Vaught petitioned for further review. We granted Vaught's petition for further review.

## ASSIGNMENTS OF ERROR

Vaught asserts that the Court of Appeals erred in concluding that the district court did not err in admitting Dr. Lamberty's testimony and in concluding that trial counsel was not ineffective for failing to object to the testimony on confrontation grounds.

## STANDARD OF REVIEW

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility.

Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, the admissibility of evidence is reviewed for an abuse of discretion. *State v. Mowell*, 267 Neb. 83, 672 N.W.2d 389 (2003).

## ANALYSIS

*Admissibility Under § 27-803(3).*

At trial, Vaught's counsel objected on hearsay grounds to Dr. Lamberty's testimony that the victim identified Vaught as the perpetrator of the assault. Vaught asserts on further review that the Court of Appeals erred in affirming the district court's decision to admit Dr. Lamberty's testimony. We conclude that the testimony by Dr. Lamberty regarding what the victim-declarant stated was admissible pursuant to § 27-803(3), and, insofar as there was no confrontation violation as indicated below, we reject Vaught's first assignment of error.

Section 27-803(3) provides that among statements that are not excluded by the hearsay rule even though the declarant is available as a witness are "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

In rejecting Vaught's hearsay argument, the Court of Appeals noted that this court has previously found statements similar to the statement admitted in this case and made under somewhat similar circumstances to be admissible under § 27-803(3). The Court of Appeals cited two Nebraska appellate cases in which it was decided that a child victim's statement to a doctor identifying the perpetrator of a sexual assault was admissible. See, *State v. Roenfeldt*, 241 Neb. 30, 486 N.W.2d 197 (1992) (10-year-old victim made statements to doctor in context of medical examination and diagnosis identifying mother's boyfriend as perpetrator of sexual assault); *State v. Max*, 1 Neb. App. 257, 492 N.W.2d 887 (1992) (3-year-old victim being treated for genital warts made statements to doctor identifying her adoptive father as perpetrator of sexual assault).

On further review, Vaught urges this court to adopt a rule enunciated by the U.S. Court of Appeals for the Eighth Circuit

with regard to statements made by children for purposes of medical treatment. In *Olesen v. Class*, 164 F.3d 1096 (8th Cir. 1999), the Eighth Circuit considered a habeas corpus case which originated in state court in South Dakota in which one victim, a 5-year-old girl, made a statement to an examining physician which identified the defendant as the perpetrator of a sexual assault. The trial court had admitted the physician's testimony regarding the victim's statement pursuant to a South Dakota statute similar to § 27-803(3). The Eighth Circuit concluded that such statement was inadmissible.

In concluding that the victim's statement in *Olesen* was inadmissible, the Eighth Circuit stated that the hearsay exception for statements made for purposes of medical treatment "is bottomed upon the premise that a patient's 'selfish motive' . . . in receiving the proper treatment guarantees the trustworthiness of the statements made to her physician." 164 F.3d at 1098. Focusing on the victim's state of mind, the Eighth Circuit held that such statements were

> admissible only when the prosecution is able to demonstrate that the victim's motive in making the statement was consistent with the purpose of promoting treatment—that is, "where the physician makes clear to the victim that the inquiry into the identity of the abuser is important to diagnosis and treatment, and the victim manifests such an understanding."

*Id.* The Eighth Circuit Court of Appeals determined that the prosecutor in *Olesen* had failed to establish that this victim's frame of mind at the time of the examination was that of a patient seeking medical treatment and that there was no evidence that the physician had explained to her that his questions regarding the identity of her abuser were important to diagnosis or treatment or that she understood the medical significance of being truthful in identifying her abuser to the doctor. The Eighth Circuit Court of Appeals reversed the federal district court's ruling as to this victim.

Although we decline Vaught's invitation to explicitly adopt the rule in *Olesen*, the discussion in *Olesen* by the Eighth Circuit Court of Appeals regarding the purposes behind the exception for statements made for the purpose of medical diagnosis or

treatment informs our analysis in this case. In order for testimony to be admissible under § 27-803(3), it is necessary to establish that the statement at issue falls within the exception, bearing in mind the purposes noted by the court of appeals in *Olesen.* Therefore, the evidence must satisfactorily demonstrate that the circumstances under which the statement was made were such that the declarant's purpose in making the statement was to assist in the provision of medical diagnosis or treatment, that the declarant's statement was reasonably pertinent to such diagnosis or treatment and, further, that a doctor would reasonably rely on such statement. Under § 27-803(3), there need not be direct evidence of the declarant's state of mind, as seems to be required under *Olesen*; instead, the appropriate state of mind of the declarant may be reasonably inferred from the circumstances. We note that § 27-803(3) does not make any exceptions or qualifications based on the age of the declarant, and we decline to presume that children speaking to physicians are not truthful and are not motivated by promoting medical treatment. See *U.S. v. Edward J.,* 224 F.3d 1216 (10th Cir. 2000) (rejecting such presumptions under Fed. R. Evid. 803(4) and declining to adopt *Olesen* rationale). However, we recognize that cases where the declarant is a child, as compared to an adult, may require additional evidence of the circumstances surrounding the statement in order to establish that the state of mind of the declarant was consistent with the objective of medical diagnosis or treatment.

In the present case, we determine that the evidence was sufficient for the district court to conclude that the victim's statement to Dr. Lamberty qualified under § 27-803(3) as a statement "made for purposes of medical diagnosis or treatment and describing . . . the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Dr. Lamberty testified in detail regarding the circumstances under which the victim made her statement. As described, those circumstances were such that the 4-year-old victim clearly understood that a medical examination was being performed, that the purpose of the doctor's questions was to assist in medical diagnosis and treatment and, thus, that the victim's statements were motivated by seeking treatment. Dr. Lamberty testified that he had no concerns that the victim did not understand the nature of the

examination, and his testimony indicates his state of mind was such that he reasonably relied on the victim's statement. Dr. Lamberty also testified that there were valid medical treatment purposes for learning the identity of the perpetrator and that such purposes were pertinent to diagnosis and treatment. Such testimony by Dr. Lamberty was sufficient to infer the victim's state of mind in making the statement.

Dr. Lamberty's testimony regarding the circumstances surrounding the victim's statement was sufficient for the district court to conclude that the victim's statement was of the type described in § 27-803(3) and therefore admissible under that statute. We conclude that the Court of Appeals did not err in affirming the district court's admission under § 27-803(3) of Dr. Lamberty's testimony regarding the victim's identification of Vaught as the perpetrator.

*Ineffective Assistance of Counsel and Confrontation Clause.*

Vaught's trial counsel objected to Dr. Lamberty's testimony on hearsay grounds but did not specifically object on Confrontation Clause grounds. Vaught asserted on appeal that his trial counsel was ineffective for failing to make this latter objection. The Court of Appeals rejected this argument.

Vaught asserts on further review that the Court of Appeals erred in concluding that trial counsel did not provide ineffective assistance by failing to make an objection on the basis of the Confrontation Clause. We conclude that the admission of Dr. Lamberty's testimony did not violate the Confrontation Clause, that trial counsel was not ineffective for failing to object on confrontation grounds, and that the decision by the Court of Appeals regarding this issue was not in error.

The Confrontation Clause, U.S. Const. amend. VI, provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." Neb. Const. art. I, § 11, provides, in relevant part: "In all criminal prosecutions the accused shall have the right . . . to meet the witnesses against him face to face . . . ." We have held that the analysis under article I, § 11, is the same as that under the Sixth Amendment to the U.S. Constitution. *State v. Jacobs*, 242 Neb. 176, 494 N.W.2d 109 (1993).

We have previously stated that analysis of the issue of whether the Confrontation Clause prohibits admission of hearsay testimony is made by reference to the U.S. Supreme Court's decision in *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980). See *State v. Sheets*, 260 Neb. 325, 618 N.W.2d 117 (2000). In *Sheets*, we stated that in *Roberts*,

the U.S. Supreme Court determined that when a witness is unavailable for cross-examination, his or her statements are admissible only if they bear adequate indicia of reliability. Reliability can be inferred, without more, in a case in which the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, absent a showing by the State of particularized guarantees of trustworthiness.

*Sheets*, 260 Neb. at 336, 618 N.W.2d at 127.

■ However, in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the U.S. Supreme Court recently altered the test enunciated in *Roberts*. *Crawford* was filed subsequent to the decision by the Court of Appeals, which decision is now on further review. In *Crawford*, the U.S. Supreme Court held that where "testimonial" statements are at issue, the Confrontation Clause demands that such hearsay statements be admitted at trial only if the declarant is unavailable and there had been a prior opportunity for cross-examination. 541 U.S. at 68. Therefore, at least with respect to testimonial statements, the Court overruled the holding in *Roberts* that hearsay statements could be admitted despite the absence of a prior opportunity for cross-examination if the statements fell within a firmly rooted hearsay exception or the statements bore particularized guarantees of trustworthiness.

Because *Crawford* limited its holding to testimonial statements, our initial step is to determine whether the statements at issue in the present case were testimonial in nature. The U.S. Supreme Court in *Crawford* declined to provide a comprehensive definition of "testimonial" but stated that the term applied at a minimum to "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." 541 U.S. at 68. We note that Justice Thomas joined the opinion of the Court in *Crawford* and that further illumination of the term

"testimonial" may be found in Justice Thomas' concurrence in *White v. Illinois*, 502 U.S. 346, 112 S. Ct. 736, 116 L. Ed. 2d 848 (1992). In his concurrence in *White*, Justice Thomas noted that the United States, as an amicus, had suggested in *White* that "the Confrontation Clause should apply only to those persons who provide in-court testimony or the functional equivalent, such as affidavits, depositions, or confessions that are made in contemplation of legal proceedings." 502 U.S. at 364. Justice Thomas proposed that "the Confrontation Clause is implicated by extrajudicial statements only insofar as they are contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions." 502 U.S. at 365.

Although the U.S. Supreme Court has not fully defined "testimonial," it did provide three formulations of the core class of testimonial statements which the Court of Appeals for the First Circuit described as follows:

> In the first, testimonial statements consist of "ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." . . . The second formulation described testimonial statements as consisting of "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions." . . . Finally, the third explained that testimonial statements are those "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." . . . While the Court declined to settle on a single formulation, it noted that, "[w]hatever else the term [testimonial] covers, it applies . . . to prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and to police interrogations. These are the modern abuses at which the Confrontation Clause was directed."

(Citations omitted.) *Horton v. Allen*, No. 03-1423, 2004 WL 1171383 at *6 (1st Cir. May 26, 2004).

We agree with the First Circuit's analysis. The victim's statement herein did not fit any of these formulations, nor did it share

characteristics of these formulations. We believe on the facts of this case that the victim's statement to the doctor was not a "testimonial" statement under *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). As discussed above, the victim's identification of Vaught as the perpetrator was a statement made for the purpose of medical diagnosis or treatment. In the present case, the victim was taken to the hospital by her family to be examined and the only evidence regarding the purpose of the medical examination, including the information regarding the cause of the symptoms, was to obtain medical treatment. There was no indication of a purpose to develop testimony for trial, nor was there an indication of government involvement in the initiation or course of the examination. See *Evans v. Luebbers*, No. 03-1900, 2004 WL 1277980 (8th Cir. June 10, 2004). Compare *Snowden v. State*, 156 Md. App. 139, 846 A.2d 36 (2004) (stating in child sexual abuse case that where children were interviewed for express purpose of developing their testimony, statements of victims presented by social worker were "testimonial" under *Crawford*). Our decision as to whether the statement at issue is "testimonial" under *Crawford* does not preclude a different conclusion based on a different set of facts.

Because the U.S. Supreme Court specifically referred to testimonial statements in its holding in *Crawford*, the effect of the Confrontation Clause on the admission of nontestimonial hearsay statements post-*Crawford* is unclear. The Court in *Crawford* stated that "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." 541 U.S. at 68. The Court made no explicit statement regarding nontestimonial statements but did suggest that either such statements required no Confrontation Clause scrutiny or that prior standards developed under *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), or its progeny still applied to nontestimonial hearsay evidence. Our observation in this regard is consistent with post-*Crawford* jurisprudence. See, e.g., *U.S. v. Reyes*, 362 F.3d 536, 540 n.4 (8th Cir. 2004) (stating that "*Crawford* did not provide additional protection for nontestimonial statements, and indeed,

questioned whether the Confrontation Clause protects nontesti-monial statements at all").

Therefore, if after *Crawford*, nontestimonial statements require no Confrontation Clause scrutiny, the nontestimonial statement of the victim in this case was admissible under the hearsay rule analysis recited above. To the extent that after *Crawford*, the confrontation-based standards developed in *Roberts* and its progeny still apply to nontestimonial statements, as explained below, the admission of the statements in the present case did not violate the Confrontation Clause. In this regard, we note that subsequent to *Roberts* and prior to *Crawford*, the U.S. Supreme Court considered the effect of the Confrontation Clause on the admission of statements made for the purpose of medical diagnosis and treatment in *White v. Illinois*, 502 U.S. 346, 112 S. Ct. 736, 116 L. Ed. 2d 848 (1992). We consider the possible impact of *White* upon this case.

In *White*, the Court analyzed medical diagnosis and treat-ment statements under the *Roberts* test and held that (1) a deter-mination that a declarant was unavailable was a necessary part of the Confrontation Clause inquiry only when the challenged out-of-court statements were made in the course of a prior judicial proceeding and (2) that the hearsay exception for statements made for purposes of medical diagnosis or treatment was a firmly-rooted hearsay exception. The Court held in *White* that the Confrontation Clause did not exclude the admission of medical diagnosis and treatment statements, whether or not the record showed that the declarant was unavailable. As we noted above, the victim's identification of Vaught in the present case was a state-ment made for purposes of medical diagnosis or treatment. Thus, to the extent *White* survives *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), under *White*, whether or not the victim in this case was unavailable as a wit-ness, the Confrontation Clause would not exclude the admission of such a statement.

Given our analysis of confrontation law in the area of the med-ical diagnosis and treatment hearsay exception, we conclude that whether such nontestimonial statements are exempt from Confrontation Clause scrutiny after *Crawford* or whether pre-*Crawford* case law, including *White*, is still applicable, the

admission of the statement in the present case did not violate the Confrontation Clause. Because there was no Confrontation Clause violation, Vaught's counsel was not ineffective for failing to object on confrontation grounds. We conclude that the Court of Appeals did not err in rejecting this assignment of error.

## VI. CONCLUSION

We conclude that Dr. Lamberty's testimony regarding the victim's identification of Vaught as the perpetrator was admissible under § 27-803(3). We further conclude that under the facts of this case, the statement at issue was nontestimonial under *Crawford* and that its admission did not violate the Confrontation Clause. In view of our analysis, trial counsel did not provide ineffective assistance by failing to object to the physician's testimony on confrontation grounds. We affirm the Court of Appeals' decision affirming Vaught's conviction and sentence.

AFFIRMED.